CR21-328 LHK

# United States District Court

FOR THE
NORTHERN DISTRICT OF CALIFORNIA

VENUE: SAN JOSE

SEALED BY ORDER OF COURT

CR 21 00328 LHK

FILED
Aug 25 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES OF AMERICA VKD

V.

DAVID CERVANTES aka "DC," ANTONIO GUILLEN aka "Chuco," JAMES PEREZ aka "Conejo," SAMUEL LUNA aka "Sammy," GUILLERMO SOLORIO aka "Capone," TRINIDAD MARTINEZ aka "Trino," GEORGE FRANCO aka "Puppet," STEVEN TRUJILLO aka "Esteban," SALVADOR CASTRO aka "Gangster," BRYAN ROBLEDO aka "Turtle," ALEX YRIGOLLEN aka "Sleepy," JUAN SOTO aka "Drifter," EDGARDO RODRIGUEZ aka "Big Evil," ROBERT MALDONADO aka "KJ," ERIC ZARATE aka "Baby G," ROCKY BRACAMONTE aka "Fox," JOSHUA CORTEZ aka "Buddah," WILLIAM RODRIGUEZ aka "Negro," MARVIN RODRIGUEZ, CRISTIAN MORA aka "C-Fresh," MARTIN JOSEPH RUPPEL JR., and ANAELISA CUEVAS

DEFENDANT(S).

## INDICTMENT

18 U.S.C. § 1962(d) -- Racketeering Conspiracy; 21 U.S.C. §§ 846, 841(a)(1), and (b)(1) -- Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine; and 18 U.S.C. § 1963, 21 U.S.C. ¨ 853, and 28 U.S.C. § 2461(c) -- Forfeiture

A true bill.

/s/ Foreperson of the Grand Jury
                                    Foreman

Filed in open court this __25th__ day of

August, 2021.

*Karen L. How*
                                         Clerk

Bail, $ __Arrest Warrants__

STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

**FILED**
Aug 25 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

SEALED BY ORDER OF COURT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR21-328 LHK |
| Plaintiff, | |
| v. | VIOLATIONS:<br>18 U.S.C. § 1962(d) – Racketeering Conspiracy;<br>21 U.S.C. §§ 846, 841(a)(1), and (b)(1) – Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine; and<br>18 U.S.C. § 1963, 21 U.S.C. § 853, and 28 U.S.C. § 2461(c) – Criminal Forfeiture |
| DAVID CERVANTES aka "DC,"<br>ANTONIO GUILLEN aka "Chuco,"<br>JAMES PEREZ aka "Conejo,"<br>SAMUEL LUNA aka "Sammy,"<br>GUILLERMO SOLORIO aka "Capone,"<br>TRINIDAD MARTINEZ aka "Trino,"<br>GEORGE FRANCO aka "Puppet,"<br>STEVEN TRUJILLO aka "Esteban,"<br>SALVADOR CASTRO aka "Gangster,"<br>BRYAN ROBLEDO aka "Turtle,"<br>ALEX YRIGOLLEN aka "Sleepy,"<br>JUAN SOTO aka "Drifter,"<br>EDGARDO RODRIGUEZ aka "Big Evil,"<br>ROBERT MALDONADO aka "KJ,"<br>ERIC ZARATE aka "Baby G,"<br>ROCKY BRACAMONTE aka "Fox,"<br>JOSHUA CORTEZ aka "Buddah,"<br>WILLIAM RODRIGUEZ aka "Negro,"<br>MARVIN RODRIGUEZ,<br>CRISTIAN MORA aka "C-Fresh,"<br>MARTIN JOSEPH RUPPEL JR., and<br>ANAELISA CUEVAS,<br>Defendants. | SAN JOSE VENUE<br><br>**FILED UNDER SEAL** |

- 1 -

INDICTMENT

INDICTMENT

The Grand Jury charges, with all dates being approximate and all date ranges both approximate and inclusive, that at all times relevant to this Indictment:

COUNT ONE:   (18 U.S.C. § 1962(d) – Racketeering Conspiracy)

Introductory Allegations

1. La Nuestra Familia – Spanish for "Our Family" and also known as the "NF" – was a prison gang formed in the late 1960s in the California state prison system. The emergence of the NF began with a segment of Mexican-American prisoners who were members of, and eventually became disgruntled with, the Mexican Mafia prison gang. This group of disgruntled inmates formed the NF as a rival to the Mexican Mafia. Operating primarily in Northern California and within California correctional institutions, the NF has flourished as a lucrative and violent organization.

2. The NF was and continues to be composed of a relatively small number of made members, known by many names such as "carnales" or "familianos." As is the case today, NF membership involved a process of sponsorship, approval, and indoctrination. The perpetration of violence and other crimes – including acts involving murder and drug trafficking – was ordinarily a prerequisite to entrance, continued membership, and advancement in the organization. And, once membership was achieved, this membership was for life.

3. Falling under the NF, and carrying out its will, was the body oftentimes referred to as the "Northern Structure" (or the "NS"). Those who were NS members have been referred to by various titles such as "brother" or "N-Sol." Under the NS, and subject to NF and NS supervision, were Norteno street gangs established in numerous cities and counties – and in jails and prisons – throughout Northern California and elsewhere. As such, the NF wielded enormous influence overseeing thousands of gang members, both inside and outside of correctional systems.

4. Whether inside or outside of the custodial setting, NF, NS, and Norteno street gang members were required to abide by rules and regulations imposed by the NF organization. NF members were required to abide by the NF Constitution, which has taken various forms over the years of the NF's existence. The latest version of the NF Constitution provided for a hierarchical leadership structure at the top of which sit three NF Generals: the General Advocates Office ("GAO"), the Street Regiment General

("SRG"), and the General of Pintas/Prisons ("GOP"). According to a version of the NF Constitution, "[t]he office of the SRG is responsible for the security and overall street operations." The NF Constitution also specified that "[t]he Office of the GOP is responsible for the security and overall pinta functions." Finally, it stated that "[t]he office of the GAO is the justice department and responsible for looking into any alleged constitutional violations and/or individual C's suffering unjust abuse of power." The GAO was also tasked with maintaining the pot of illicit proceeds provided to the NF, otherwise referred to as the NF "bank."

5. To impose a system of checks and balances on the Generals, the NF formed an "Inner Council" (or the "IC"), at times composed of four senior NF members. The members of the IC were designated by the NF Constitution as "advisors" to the NF Generals, and tiered just below the Generals in the overall hierarchy. The IC members and the three NF Generals combined to form the "General Council" (or the "GC") to make significant decisions in conducting the affairs of the NF.

6. Outside of these positions, NF members (including GC members) were designated by rank as either Category-I, Category-II, or Category-III – commonly abbreviated as CAT-I, CAT-II, or CAT-III. As described herein, CAT-III was the highest-ranking status an NF member could hold. The NF Generals and IC members were required to have CAT-III status before assuming their higher office. Next, CAT-II members of the NF were ranked immediately below CAT-III members. Below CAT-II members were CAT-I members, who were the lowest-ranking NF members. Membership and status within the NF were based on "time and grade" – seniority in the organization and criminal activity conducted in the interest of the NF. Each rank carried specific responsibilities.

7. The NF organized itself into a paramilitary structure, both inside and outside of California prisons. Outside of custodial settings, the NF organized its subordinate groups into established geographic territories called "street regiments." Street regiments were generally formed by county and surrounding areas. While street regiments ultimately answered to the SRG, each street regiment was typically controlled by an incarcerated NF member who had been appointed by the SRG and was generally referred to as the "Regiment Commander" (or "RC"). A regiment commander usually used one or more other NF or NS members to assist with overseeing, managing, directing, and otherwise controlling the criminal activity conducted by NF, NS, and Norteno street gang members in the county or counties under the

regiment commander's control. These criminal activities included – but were not limited to – acts involving murder and robbery, drug trafficking, money laundering, and other criminal activity for the benefit and continued functioning of the NF, the regiment, and its members and associates. In fact, one of the NF's purposes in establishing street regiments was to generate money from such illicit activity and collect monthly "dues" or "contributions," which were then distributed within the NF and its subordinate groups.

8. Inside the custodial setting, the NF organized itself and its subordinate groups into a similar hierarchical and paramilitary structure in each jail or prison. At the highest levels of leadership within prison facilities with an NF presence, the GOP appointed an overall authority or regiment commander, who was responsible for NF-related activity within that facility. There were also various other subordinate levels of command, based on the facility's division of housing units and recreation yards. As was the case on the streets, inmates under the umbrella of a regiment were expected to engage in criminal activities, such as acts involving murder and drug trafficking, and provide a portion of their illicit profits to be distributed within the regiment and the NF.

9. Maintaining discipline within, and allegiance to, the NF was a constant concern and preoccupation of the NF leadership. The NF Constitution provided for discipline of NF members that included "expulsion" from the NF – in other words, the killing of that NF member. Expulsion required due process and a leadership vote, but was automatic under the NF Constitution "for any member Carnal turning traitor, coward, or deserter." In fact, an NF oath provides: "If I lead, follow. If I stumble, push me. If I fall, avenge me. If I betray you, kill me."

10. NS and Norteno gang members were also subject to discipline for failure to abide by required rules and regulations. The degree of punishment would depend on the violation, and could range from being assigned additional exercise to being "deemed" or designated for "removal." Those who were deemed or ordered removed were to be killed. Typically, orders to kill were made or approved by the respective regiment commander, who was responsible for the conduct and discipline of those functioning under him.

11. To maintain discipline and allegiance, incarcerated NF leadership communicated with members and associates, both within and beyond the prison walls, through assigned "channels" or other

- 4 -

INDICTMENT

writings sometimes referred to as "kites," "filters," or "abreastments." Through such communication, the NF leadership remained informed of the activities of members and associates, and were able to issue specific orders and promulgate new general rules and directives. While these traditional types of communications remained in use, incarcerated NF leadership also made extensive use of smuggled cellular telephones to communicate with other prisons, jails, and the streets. Such methods of communication were previously unavailable to these inmates while they were housed in secure housing units within California prisons. However, their release from these secure units and return to the mainline has resulted in easier access to direct communication methods allowing immediate contact with other members and associates. For example, an order to kill can be more quickly issued and acted on through the use of cell phones than with written notes that are significantly slower and less reliable.

### The Racketeering Enterprise: the Nuestra Familia Enterprise

12. The Nuestra Familia, including its leadership, members, and associates, in the Northern District of California, the State of California, and elsewhere, constituted an "enterprise" as defined in Title 18, United States Code, Section 1961(4) (hereinafter "the Nuestra Familia Enterprise" or "the Enterprise"), that is, a group of individuals associated in fact that was engaged in and the activities of which affected interstate and foreign commerce. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

### Purposes of the Nuestra Familia Enterprise

13. The primary purposes of the Nuestra Familia Enterprise included the following:

    a. To provide a means for profit through criminal activity, including drug trafficking and robbery, and for reinvestment of these illicit funds;

    b. To encourage and empower its members and associates to profit through criminal activity and reinvestment of these illicit funds;

    c. To distribute these illicit funds and reinvestments for the wellbeing of the Enterprise, for the financial support and profit of its members and associates, and to facilitate and enable additional criminal activity;

    d. To recruit members and associates to act in furtherance of the Enterprise's interests,

- 5 -

INDICTMENT

and to expand and grow its territory and financial base;

    e.    To protect, preserve, and promote the success, reputation, and authority of the Enterprise through fear and violence;

    f.    To gain and maintain power over its own membership, rival organizations, and other members of the community through fear and violence;

    g.    To provide protection and security for its members and associates from rival organizations and others through fear and violence;

    h.    To maintain discipline and structure within the Enterprise for its continued growth and functioning through use of monetary incentive, as well as through fear and violence;

    i.    To protect its members and associates who committed crimes by hindering, obstructing, and preventing law enforcement officers from identifying the offenders, apprehending the offenders, and successfully prosecuting and punishing the offenders; and

    j.    To keep potential victims, informants, and witnesses against the Enterprise in fear of the Enterprise and its members and associates through violence and threats of violence.

### The Defendants

14.    At times relevant to this Indictment, DAVID CERVANTES aka "DC," ANTONIO GUILLEN aka "Chuco," JAMES PEREZ aka "Conejo," SAMUEL LUNA aka "Sammy," GUILLERMO SOLORIO aka "Capone," TRINIDAD MARTINEZ aka "Trino," GEORGE FRANCO aka "Puppet," STEVEN TRUJILLO aka "Esteban," SALVADOR CASTRO aka "Gangster," BRYAN ROBLEDO aka "Turtle," ALEX YRIGOLLEN aka "Sleepy," JUAN SOTO aka "Drifter," EDGARDO RODRIGUEZ aka "Big Evil," ROBERT MALDONADO aka "KJ," ERIC ZARATE aka "Baby G," ROCKY BRACAMONTE aka "Fox," and JOSHUA CORTEZ aka "Buddah," were members and associates of the Nuestra Familia prison gang, and therefore members of the Enterprise.

15.    In particular, three defendants sat at the top of the entire organization as NF Generals: DAVID CERVANTES aka "DC" held the General Advocates Office, ANTONIO GUILLEN aka "Chuco" held the position of Street Regiment General, and JAMES PEREZ aka "Conejo" was the General of the Prisons/Pintas. At times relevant to this Indictment, ANTONIO GUILLEN aka "Chuco" as Street Regiment General oversaw NF street regiments in California, including (but not limited to) regiments in

the following counties: Santa Clara County, Monterey County, Santa Cruz County, San Benito County, San Francisco County, San Mateo County, Contra Costa County, Alameda County, Solano County, San Joaquin County, Fresno County, Kings County, Tulare County, Madera County, Merced County, Kern County, Sacramento County, Yolo County, Humboldt County, Shasta County, Lassen County, Tehama County, Butte County, Yuba County, Sutter County, Lake County, Placer County, and Sonoma County. Similarly, at times relevant to this Indictment, JAMES PEREZ aka "Conejo" as General of the Prisons/Pintas oversaw NF regiments in California prisons, including (but not limited to): Salinas Valley State Prison, Pelican Bay State Prison, Pleasant Valley State Prison, California State Prison - Solano, California State Prison - Sacramento, and High Desert State Prison. And DAVID CERVANTES aka "DC," while holding the General Advocates Office, oversaw the enforcement of the NF's will in NF territories. Additionally, at various times, members of the NF's Inner Council included defendants SAMUEL LUNA aka "Sammy," GUILLERMO SOLORIO aka "Capone," TRINIDAD MARTINEZ aka "Trino," and GEORGE FRANCO aka "Puppet." During times relevant to this Indictment, each of these defendants, together and with others, led the NF organization while incarcerated in the California prison system.

The Racketeering Conspiracy

16. Beginning on a date unknown, but at least in or about April 2013, and continuing through the date of this Indictment, in the Northern District of California and elsewhere, the defendants,

> DAVID CERVANTES aka "DC,"
> ANTONIO GUILLEN aka "Chuco,"
> JAMES PEREZ aka "Conejo,"
> SAMUEL LUNA aka "Sammy,"
> GUILLERMO SOLORIO aka "Capone,"
> TRINIDAD MARTINEZ aka "Trino,"
> GEORGE FRANCO aka "Puppet,"
> STEVEN TRUJILLO aka "Esteban,"
> SALVADOR CASTRO aka "Gangster,"
> BRYAN ROBLEDO aka "Turtle,"
> ALEX YRIGOLLEN aka "Sleepy,"
> JUAN SOTO aka "Drifter,"
> EDGARDO RODRIGUEZ aka "Big Evil,"
> ROBERT MALDONADO aka "KJ,"
> ERIC ZARATE aka "Baby G,"
> ROCKY BRACAMONTE aka "Fox," and
> JOSHUA CORTEZ aka "Buddah,"

together with others known and unknown, each being a person employed by and associated with the

Nuestra Familia Enterprise, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, knowingly, and willfully conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Nuestra Familia Enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of racketeering activity consisted of:

    a.    multiple acts involving murder, in violation of California Penal Code Sections 187(a), 188, 189, 182, 21a, 31, and 664;

    b.    multiple acts involving robbery, in violation of California Penal Code Sections 211, 212.5, 213, 182, 21a, 31, and 664;

    c.    multiple offenses involving the trafficking of controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1), 843, and 846; and

    d.    multiple acts indictable under Title 18, United States Code, Section 1956 (relating to the laundering of monetary instruments).

17.    It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

<u>Means and Methods of the Conspiracy</u>

18.    Among the means and methods by which the defendants and their conspirators conducted and participated in the conduct of the affairs of the Enterprise were the following:

    a.    Members and associates of the Enterprise threatened to, agreed to, attempted to, and did, commit acts of violence, including acts involving murder, to promote and protect the Enterprise's criminal operation, to enhance the reputation and prestige of the Enterprise and its members, to intimidate and gain an advantage over rival organizations, to assert power and influence over members and non-members, to prevent others from acting against the interests of the Enterprise, to retaliate against those who violated its rules and regulations or acted against its interests, to promote discipline and maintain its hierarchical structure, and to protect its members and associates from rival organizations and law enforcement.

    b.    Members and associates of the Enterprise were encouraged to commit and did commit robberies, including robberies of non-member narcotics traffickers and other individuals thought

- 8 -

INDICTMENT

to possess substantial amounts of legitimate or illicit cash. These activities were intended to financially benefit the Enterprise and its members and associates. Profits generated from such robberies were distributed within the Enterprise – to Enterprise members and associates, as well as to the Enterprise's main "bank" or various other "banks" or stashes of money maintained by the Enterprise. Proceeds maintained by the Enterprise were also earmarked for reinvestment in further profit-generating activity.

      c.    Members and associates of the Enterprise were encouraged to engage in, and did engage in, narcotics trafficking, both within prisons and on the street. Such narcotics trafficking activity was intended to generate regular profits for the financial benefit of the Enterprise. Money collected from such narcotics trafficking was distributed within the Enterprise – to Enterprise members and associates, as well as to the Enterprise's main "bank" or various other "banks" or stashes of money maintained by the Enterprise. Proceeds maintained by the Enterprise were also earmarked for reinvestment in further profit-generating activity, including the acquisition of additional narcotics to be sold by members and associates.

      d.    Members and associates of the Enterprise agreed to engage in, and did engage in, offenses involving money laundering. As referenced above, cash derived from illegal activities of Enterprise members and associates was distributed within the Enterprise and maintained in the Enterprise's "banks" – stashes of Enterprise money held by trusted members or associates. The Enterprise maintained at least one primary "bank" in addition to other "banks" distributed throughout its territory. Enterprise members stored Enterprise funds in, and transferred money between, banks for various reasons, including to conceal the source and location of those funds. Funds maintained in NF "banks" were also used to promote the carrying on of the Enterprise's activities.

      e.    The Enterprise used financial incentive, as well as its power and authority acquired through fear and violence, to build and expand its operations, territory, and loyal following.

### NOTICE OF SPECIAL SENTENCING FACTORS FOR COUNT ONE

*Number 1: Conspiracy to Commit Murder*

19.    Beginning on a date unknown to the Grand Jury, but since at least April 2013, and continuing through the date of this Indictment, within the Northern District of California and elsewhere, defendants,

                   DAVID CERVANTES aka "DC,"
                   ANTONIO GUILLEN aka "Chuco,"

INDICTMENT

- 9 -

>JAMES PEREZ aka "Conejo,"
>SAMUEL LUNA aka "Sammy,"
>GUILLERMO SOLORIO aka "Capone,"
>TRINIDAD MARTINEZ aka "Trino,"
>GEORGE FRANCO aka "Puppet,"
>STEVEN TRUJILLO aka "Esteban,"
>SALVADOR CASTRO aka "Gangster,"
>BRYAN ROBLEDO aka "Turtle,"
>ALEX YRIGOLLEN aka "Sleepy,"
>JUAN SOTO aka "Drifter,"
>EDGARDO RODRIGUEZ aka "Big Evil,"
>ROBERT MALDONADO aka "KJ," and
>ERIC ZARATE aka "Baby G,"

together with others, unlawfully, knowingly, and willfully conspired to commit murder, in violation of California Penal Code Sections 187, 188, 189, and 182, specifically, the defendants agreed together and with each other to kill, with malice aforethought, fellow gang members and others.

*Number 2: Conspiracy to Commit Murder of Victim-1*

20.     Beginning on a date unknown to the Grand Jury, but since at least April 2013, and continuing through in or about November 2016, at Pelican Bay State Prison in Crescent City, California, within the Northern District of California, and elsewhere, defendants,

>DAVID CERVANTES aka "DC,"
>ANTONIO GUILLEN aka "Chuco,"
>JAMES PEREZ aka "Conejo,"
>SAMUEL LUNA aka "Sammy," and
>GEORGE FRANCO aka "Puppet,"

together and with others, unlawfully, knowingly, and willfully, and with malice aforethought, conspired to murder Victim-1, in violation of California Penal Code Sections 187, 188, 189, and 182.

*Number 3: Attempted First Degree Murder of Victim-2 and Victim-3*

21.     On or about December 10, 2015, at Salinas Valley State Prison in Soledad, California, within the Northern District of California, and elsewhere, defendants,

>STEVEN TRUJILLO aka "Esteban," and
>ALEX YRIGOLLEN aka "Sleepy,"

together with others, unlawfully, knowingly, and willfully, with deliberation and premeditation, and with malice aforethought, attempted to kill Victim-2 and Victim-3, in violation of California Penal Code Sections 187, 188, 189, 21a, 31, and 664.

*Number 4: Attempted First Degree Murder of Victim-4*

22. On or about December 12, 2015, at Salinas Valley State Prison in Soledad, California, within the Northern District of California, and elsewhere, defendants,

> DAVID CERVANTES aka "DC,"
> JAMES PEREZ aka "Conejo," and
> STEVEN TRUJILLO aka "Esteban,"

together with others, unlawfully, knowingly, and willfully, with deliberation and premeditation, and with malice aforethought, attempted to kill Victim-4, in violation of California Penal Code Sections 187, 188, 189, 21a, 31, and 664.

*Number 5: Attempted First Degree Murder of Victim-5*

23. On or about April 20, 2016, at Salinas Valley State Prison in Soledad, California, within the Northern District of California, and elsewhere, defendants,

> DAVID CERVANTES aka "DC,"
> JAMES PEREZ aka "Conejo,"
> STEVEN TRUJILLO aka "Esteban,"
> ALEX YRIGOLLEN aka "Sleepy," and
> EDGARDO RODRIGUEZ aka "Big Evil,"

together with others, unlawfully, knowingly, and willfully, with deliberation and premeditation, and with malice aforethought, attempted to kill Victim-5, in violation of California Penal Code Sections 187, 188, 189, 21a, 31, and 664.

*Number 6: Attempted First Degree Murder of Victim-6*

24. On or about January 2, 2018, at Pleasant Valley State Prison in Coalinga, California, within the Eastern District of California, and elsewhere, defendant,

> BRYAN ROBLEDO aka "Turtle,"

together with others, unlawfully, knowingly, and willfully, with deliberation and premeditation, and with malice aforethought, attempted to kill Victim-6, in violation of California Penal Code Sections 187, 188, 189, 21a, 31, and 664.

*Number 7: Attempted First Degree Murder of Victim-7*

25. On or about February 26, 2018, at Pleasant Valley State Prison in Coalinga, California, within the Eastern District of California, and elsewhere, defendant,

> BRYAN ROBLEDO aka "Turtle,"

INDICTMENT

together with others, unlawfully, knowingly, and willfully, with deliberation and premeditation, and with malice aforethought, attempted to kill Victim-7, in violation of California Penal Code Sections 187, 188, 189, 21a, 31, and 664.

*Number 8: Attempted First Degree Murder of Victim-8*

26. On or about September 3, 2018, at Pleasant Valley State Prison in Coalinga, California, within the Eastern District of California, and elsewhere, defendant,

BRYAN ROBLEDO aka "Turtle,"

together with others, unlawfully, knowingly, and willfully, with deliberation and premeditation, and with malice aforethought, attempted to kill Victim-8, in violation of California Penal Code Sections 187, 188, 189, 21a, 31, and 664.

*Number 9: Attempted First Degree Murder of Victim-9*

27. On or about November 1, 2018, at Pleasant Valley State Prison in Coalinga, California, within the Eastern District of California, and within the Northern District of California and elsewhere, defendants,

ANTONIO GUILLEN aka "Chuco,"
JAMES PEREZ aka "Conejo," and
BRYAN ROBLEDO aka "Turtle,"

together with others, unlawfully, knowingly, and willfully, with deliberation and premeditation, and with malice aforethought, attempted to kill Victim-9, in violation of California Penal Code Sections 187, 188, 189, 21a, 31, and 664.

*Number 10: Conspiracy to Commit Murder of Victim-10*

28. Beginning in or about October 2018, and continuing through in or about January 2019, within the Northern District of California and elsewhere, defendants,

SAMUEL LUNA aka "Sammy,"
ROBERT MALDONADO aka "KJ," and
ERIC ZARATE aka "Baby G,"

together and with others, unlawfully, knowingly, and willfully, and with malice aforethought, conspired to murder Victim-10, in violation of California Penal Code Sections 187, 188, 189, and 182.

*Number 11: Conspiracy to Commit Murder of Victim-11*

29. In or about January 2019, within the Northern District of California and elsewhere,

INDICTMENT

defendants,

> SAMUEL LUNA aka "Sammy,"
> ROBERT MALDONADO aka "KJ," and
> ERIC ZARATE aka "Baby G,"

together and with others, unlawfully, knowingly, and willfully, and with malice aforethought, conspired to murder Victim-11, in violation of California Penal Code Sections 187, 188, 189, and 182.

*Number 12: Conspiracy to Commit Murder of Victim-12*

30. Beginning in or about January 2019, and continuing through the date of this Indictment, within the Northern District of California and elsewhere, defendants,

> DAVID CERVANTES aka "DC,"
> ANTONIO GUILLEN aka "Chuco,"
> SAMUEL LUNA aka "Sammy," and
> SALVADOR CASTRO aka "Gangster,"

together and with others, unlawfully, knowingly, and willfully, and with malice aforethought, conspired to murder Victim-12, in violation of California Penal Code Sections 187, 188, 189, and 182.

*Number 13: Attempted First Degree Murder of Victim-13*

31. On or about February 26, 2019, at Pleasant Valley State Prison in Coalinga, California, within the Eastern District of California, and elsewhere, defendant,

> SALVADOR CASTRO aka "Gangster,"

together with others, unlawfully, knowingly, and willfully, with deliberation and premeditation, and with malice aforethought, attempted to kill Victim-13, in violation of California Penal Code Sections 187, 188, 189, 21a, 31, and 664.

*Number 14: Attempted First Degree Murder of Victim-14*

32. On or about July 18, 2019, at Pleasant Valley State Prison in Coalinga, California, within the Eastern District of California, and within the Northern District of California and elsewhere, defendants,

> DAVID CERVANTES aka "DC,"
> ANTONIO GUILLEN aka "Chuco,"
> JAMES PEREZ aka "Conejo,"
> SAMUEL LUNA aka "Sammy,"
> GUILLERMO SOLORIO aka "Capone,"
> TRINIDAD MARTINEZ aka "Trino," and
> GEORGE FRANCO aka "Puppet,"

together with others, unlawfully, knowingly, and willfully, with deliberation and premeditation, and with

malice aforethought, attempted to kill Victim-14, in violation of California Penal Code Sections 187, 188, 189, 21a, 31, and 664.

*Number 15: Distribution and Possession with Intent to Distribute Methamphetamine*

33. On or about March 17, 2021, within the Northern District of California, defendant,

ROCKY BRACAMONTE aka "Fox"

did knowingly and intentionally distribute and possess with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

All in violation of Title 18, United States Code, Section 1962(d).

COUNT TWO:   (21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B) – Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine)

34. Beginning on or about May 1, 2019, and continuing to on or about May 29, 2019, in the Northern District of California, defendants,

WILLIAM RODRIGUEZ aka "Negro,"
MARVIN RODRIGUEZ,

and others, did knowingly and intentionally conspire to distribute and possess with intent to distribute 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(B).

COUNT THREE:   (21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B) – Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine)

35. Beginning in or about September 2020, and continuing to on or about March 15, 2021, in the Northern District of California, defendants,

CRISTIAN MORA aka "C-Fresh,"
MARTIN JOSEPH RUPPEL JR.,
ANAELISA CUEVAS,

and others, did knowingly and intentionally conspire to distribute and possess with intent to distribute 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States

INDICTMENT

- 14 -

Code, Sections 846, 841(a)(1), and (b)(1)(B).

<u>FORFEITURE ALLEGATION</u>: (18 U.S.C. § 1963, 21 U.S.C. § 853, and 28 U.S.C. § 2461(c))

36.   The factual allegations contained in Count One of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 1963, and Title 28, United States Code, Section 2461(c).

37.   Upon conviction of the offense alleged in Count One of this Information, the defendants,

> DAVID CERVANTES aka "DC,"
> ANTONIO GUILLEN aka "Chuco,"
> JAMES PEREZ aka "Conejo,"
> SAMUEL LUNA aka "Sammy,"
> GUILLERMO SOLORIO aka "Capone,"
> TRINIDAD MARTINEZ aka "Trino,"
> GEORGE FRANCO aka "Puppet,"
> STEVEN TRUJILLO aka "Esteban,"
> SALVADOR CASTRO aka "Gangster,"
> BRYAN ROBLEDO aka "Turtle,"
> ALEX YRIGOLLEN aka "Sleepy,"
> JUAN SOTO aka "Drifter,"
> EDGARDO RODRIGUEZ aka "Big Evil,"
> ROBERT MALDONADO aka "KJ,"
> ERIC ZARATE aka "Baby G,"
> ROCKY BRACAMONTE aka "Fox," and
> JOSHUA CORTEZ aka "Buddah,"

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 1963(a), (1) any interest he has acquired or maintained in violation of Section 1962 of Title 18 of the United States Code; (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of Section 1962 of Title 18 of the United States Code; and (3) any property constituting or derived from any proceeds which he obtained directly or indirectly from racketeering activity, in violation of Title 18, United States Code, Section 1962.

38.   Upon conviction of any of the offenses alleged in Count Two or Count Three above, the defendants,

> WILLIAM RODRIGUEZ aka "Negro,"
> MARVIN RODRIGUEZ,
> CRISTIAN MORA aka "C-Fresh,"
> MARTIN JOSEPH RUPPEL JR., and
> ANAELISA CUEVAS,

shall forfeit to the United States all right, title, and interest in any property constituting and derived from

- 15 -

INDICTMENT

any proceeds defendant obtained, directly or indirectly, as a result of such violations, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations.

39.  If, as a result of any act or omission of the defendant, any of the property subject to forfeiture

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty;

any and all interest the defendant has in any other property, shall be forfeited to the United States pursuant to 21 U.S.C. § 853(p) and 18 U.S.C. § 1963(m).

All pursuant to 18 U.S.C. § 1963, 21 U.S.C. § 853, 28 U.S.C. § 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED: August 25, 2021                                             A TRUE BILL.

                                                                                              _/s/ Foreperson_
                                                                                              FOREPERSON
                                                                                              San Francisco, California

STEPHANIE M. HINDS
Acting United States Attorney


_/s/ Katherine Griffin_
KATHERINE GRIFFIN
JOHN C. BOSTIC
ERIN CORNELL
Assistant United States Attorneys