1

2

3

4                           UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    USA,                                    Case Nos.:
                                             21-cr-00328-YGR-1 (DMR)
8                    Plaintiff,              21-cr-00328-YGR-3 (DMR)

9           v.                               **ORDER ON DEFENDANTS' MOTION
                                             TO COMPEL**
10   DAVID CERVANTES,
                                             Re: Dkt. No. 746
11                   Defendant.

12          Defendants David Cervantes and James Perez seek pretrial discovery.  The court held a

13   hearing on May 25, 2023 and ordered the parties to file a joint letter with additional briefing

14   addressing whether the requested documents and information are discoverable under Federal Rule

15   of Criminal Procedure 16(a)(2).  [Docket No. 710 (Minute Order).]  The parties filed a joint letter

16   regarding Rule 16(a)(2) on June 22, 2023.  [Docket No. 746 (Jt. Letter).]  For the following

17   reasons, Defendants' motion to compel is granted in part and denied in part.

18   **I.      BACKGROUND**

19          Twenty-two Defendants have been charged with racketeering conspiracy in violation of 18

20   U.S.C. § 1962(d) for their alleged participation in the activities of the Nuestra Familia ("NF")

21   prison gang while incarcerated in California state prison.  In relevant part, the August 25, 2021

22   indictment alleges that Defendants Cervantes (aka DC) and Perez (aka Conejo) are two of three

23   Defendants who "sat at the top of the entire organization as NF Generals."  [Docket No. 1

24   (Indictment) ¶ 15.]

25          Cervantes and Perez move to compel discovery about law enforcement's plan to

26   interrogate them at Moffett Federal Airfield.  Defendants contend the discovery is material to

27   forthcoming motions to suppress evidence obtained at the interrogations (RFP Nos. 12-15).  At the

28   hearing, the government argued for the first time that responsive documents and information may

not be subject to disclosure under Federal Rule of Criminal Procedure 16(a)(2).  Neither side addressed Rule 16(a)(2) in their briefing.  Accordingly, the court ordered the parties to meet and confer and file a joint letter discussing "particular responsive documents and/or categories of responsive documents for which the parties dispute whether Rule 16(a)(2) applies."  Minute Order.  At the parties' joint request, the June 8, 2023 deadline for a joint letter regarding Rule 16(a)(2) was continued to June 22, 2023.  [Docket No. 724.]  The parties timely filed a joint letter setting forth their positions.

## II.   LEGAL STANDARDS

### A.   Federal Rule of Criminal Procedure 16

"There is no general constitutional right to discovery in a criminal case."  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  Federal Rule of Criminal Procedure 16 "grants criminal defendants a broad right to discovery."  *United States v. Muniz- Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013).  Rule 16 imposes obligations on both the government and the defense.  *United States v. Fort*, 478 F.3d 1099, 1102 (9th Cir. 2007).  Rule 16(a) identifies particular materials that the government must disclose to the defense, including the defendant's oral statements in response to interrogation.  Fed. R. Crim. P. 16(a)(1)(A).  In addition, upon a defendant's request, the government must permit the inspection of documents and objects such as "books, papers, documents, data, photographs, tangible objects, buildings or places . . . if the item is within the government's possession, custody, or control" and the object is "material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E).  "[F]ederal prosecutors are deemed to have 'possession and control' over material in the possession of other federal agencies as long as they have 'knowledge' of and 'access' to that material."  *Fort*, 478 F.3d at 1103 (citing *United States v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995)).

"A defendant must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense."  *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010).  "Rule 16 permits discovery that is relevant to the development of a possible defense," *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 199), and "[i]nformation that is not exculpatory or impeaching may still

be relevant to developing a possible defense." *Muniz-Jaquez*, 718 F.3d at 1183. "Materiality is a low threshold." *United States v. Hernandez-Mesa*, 720 F.3d 760, 768 (9th Cir. 2013). While "[n]either a general description of the information sought nor conclusory allegations of materiality suffice," *Mandel*, 914 F.2d at 1219, "[a] defendant needn't spell out his theory of the case in order to obtain discovery. Nor is the government entitled to know in advance specifically what the defense is going to be." *United States v. Hernandez-Mesa*, 720 F.3d 760, 768 (9th Cir. 2013).

Rule 16(a) also identifies information that is not subject to disclosure, including "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2).

**B.    *Brady***

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), prosecutors have an "affirmative duty to disclose evidence favorable to the defense." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995). The scope of favorable evidence includes everything that is "material either to guilt or to punishment." *Brady*, 373 U.S. at 87. The prosecutor's "constitutional duty is triggered by the potential impact of favorable but undisclosed evidence." *Kyles,* 514 U.S. at 434. Evidence is material when, "considered collectively, not item by item," *id.* at 436, it would create a "reasonable probability" of a different result for the defendant. *Id.* at 433 (quoting *United States v. Bagley,* 473 U.S. 667, 682 (1985)). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682. Knowledge of all evidence in the possession of the government, and any state agency working with the prosecution, is attributed to the prosecutor. *Giglio v. United States*, 405 U.S. 150, 154 (1972). Therefore, "the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Kyles,* 514 U.S. at 437; *see also Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997) (en banc) (noting that "[b]ecause the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned.").

With respect to the timing of the production of *Brady* material, "*Brady* does not necessarily

require that the prosecution turn over exculpatory material *before* trial." *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988) (emphasis in original).  Instead, "disclosure 'must be made at a time when [it] would be of value to the accused.'" *Id.* (citing *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985)); *accord United States v. Fernandez*, 231 F.3d 1240, 1248 n.5 (9th Cir. 2000).  In other words, due process requires only that *Brady* material be disclosed in time for its "effective use at trial." *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001).  Further, "[w]hen the defense seeks evidence which qualifies as both Jencks Act and *Brady* material, Jencks Act standards control." *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979); *accord United States v. Alvarez*, 358 F.3d 1194, 1211 (9th Cir. 2004); *see also United States v. Diaz*, No. CR 05-0167 WHA, 2008 WL 360582, at *1 (N.D. Cal. Feb. 8, 2008) (noting "the Jencks Act trumps *Brady*.").  Information that must be timely disclosed includes "material evidence helpful to the accused" on a motion to suppress. *United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000).

## III.    DISCUSSION

The indictment was filed on August 25, 2021.  On August 27, 2021, the court issued a writ of habeas corpus ad prosequendum directing the production of Cervantes and two other Defendants to the U.S. Marshal prior to appearing before a magistrate judge on September 15, 2021. [Docket No. 4.]  Instead of being brought directly to court, Defendants were interviewed by federal agents at Moffett Federal Airfield in Mountain View, California.  According to defense counsel, Defendants were transported by California Department of Corrections and Rehabilitations ("CDCR") facilities to Moffett, where agents "staged an elaborate interview operation in the middle of the night with tents, tables, recording devices, and evidence to confront the defendants with." Reichmuth Decl. Mar. 23, 2023 ¶ 6.  Defense counsel further states that Defendant Cervantes was asked to cooperate and did not receive a Miranda warning.  Agents informed Cervantes that "he would not be going to Santa Rita Jail, but instead 'straight to federal prison . . . once you guys get that transportation outta here, to Atwater, it's out of our hands.'" *Id.*  Cervantes was then housed in administrative segregation at USP Atwater.  He is in his 70s and uses a wheelchair. *Id.*

United States District Court
Northern District of California

1       Defense counsel states that the agents "may have been tacitly threatening solitary

2   confinement" by mentioning Atwater, because "it is well-known that other alleged high-ranking

3   NF members are housed in solitary confinement in federal prison at ADX Florence following their

4   conviction in this District." *Id*. at ¶ 7.  Additionally, defense counsel states that the agents "may

5   have believed that there was a split between alleged NF members housed in federal custody and

6   those alleged members" in CDCR custody, "including some of the defendants in the present case."

7   Counsel states that the reference to sending Cervantes and others "straight to federal prison . . .

8   appears calculated to evoke the threat of violence." *Id*.

9       Cervantes and Perez intend to move to suppress the interviews based on official coercion

10  and potential misconduct.  *Id*. at ¶ 8.  They requested four categories of documents and

11  information (RFP Nos. 12-15) that they contend are material to their motions to suppress.  RFP

12  No. 12 requests "Information and records about the decision to detain the defendants at USP

13  Atwater."  RFP No. 13 requests "Information and records about the decision not to bring

14  defendants to the nearest magistrate judge for their initial appearances consistent with Federal

15  Rule of Criminal Procedure 5."  RFP No. 14 seeks "Information and records about the decision to

16  transport defendants to Moffett Federal Airfield in Mountain View during their transfer to USP

17  Atwater on or about August 27, 2021."  RFP No. 15 asks for "Information and records about the

18  decision to allow federal agents to interview defendants outside the presence of counsel while at

19  Moffett Field."

20      The court first addresses the materiality of the requested information and then turns to its

21  discoverability under Rule 16(a)(2).

22      **A.  Materiality**

23      Defendants argue that discovery about the government's pre-planned decision to transport

24  them to Moffett under the guise of a writ ad prosequendum, failure to give *Miranda* warnings, and

25  threat to detain them at Atwater are material to the voluntariness of their statements during the

26  interviews as well as a potential claim of government misconduct.  Mot. 10.

27      The government responds that even if Cervantes's allegations about the threat of solitary

28  confinement are true, such a threat "does not rise to the level of coercion and does not constitute

United States District Court
Northern District of California

5

outrageous government conduct," citing *United States v. Stinson*, 647 F.3d 1196, 1210 (9th Cir. 2011). Opp'n 15. In *Stinson*, the Ninth Circuit held that "[i]n order to show outrageous government conduct, defendants must show conduct that violates due process in such a way that it is so grossly shocking and so outrageous as to violate the universal sense of justice." 647 F.3d at 1209 (quotation marks and citation omitted). Under this standard, the Ninth Circuit concluded that a corrections officer's threat to send a witness to solitary confinement if he did not provide information about one of the defendants "did not rise to the level of coercion." *Id*. at 1209-10 (citations omitted). According to the government, "there is no basis for compelling discovery in service of a motion that must be denied due to binding precedent." Opp'n 16.

The government also notes that the interviews were videorecorded and the recordings have been produced, and that if Cervantes wishes to move to suppress his statement based on a *Miranda* violation he can do so using the recording that is already in his possession. *Id*. at 15.

In their reply, Defendants distinguish *Stinson* by arguing that it involved the conduct of cooperating government witnesses, rather than the defendants themselves. Reply 9. They describe Cervantes as "an elderly, wheelchair-bound prisoner" who previously served decades in solitary confinement but had recently been residing on a Level II Yard in state prison, *see* Reichmuth Decl. ¶¶ 6, 7, suggesting that under these circumstances, a threat to return him to solitary confinement could constitute outrageous government conduct.

Defendants also contend that the requested discovery is material to whether their statements were voluntary or "unduly coerced." Reply 9; *see* Mot. 9-10 (citing, e.g., *United States v. Leon Guerrero*, 847 F.2d 1363, 1365 (9th Cir. 1988)). In *Leon Guerrero*, the Ninth Circuit held that "[b]efore a criminal defendant's statement can be used against him, the government must prove its voluntariness by a preponderance of the evidence." 847 F.2d at 1365. "The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Id*. at 1366. "A statement is involuntary if it is 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" *Id*. (quoting *Hutto v. Ross*, 429 U.S. 28, 30 (1976)). The Ninth Circuit

United States District Court
Northern District of California

6

1   has "repeatedly found that a threat of harsher treatment renders any subsequent confession

2   involuntary." *United States v. Casillas*, 538 F. App'x 751, 751-52 (9th Cir. 2013) (collecting

3   cases).

4       The government does not respond to Defendants' argument that the requested discovery is

5   material to the issue of whether their statements at Moffett Field were voluntary, even though they

6   raised it in their opening brief. *See* Mot. 9-10.

7       The court concludes that Defendants have established the materiality of information about

8   the planning and circumstances of the Moffett interrogation under Rule 16(a) because they have

9   offered "facts which would tend to show that the Government is in possession of information

10  helpful to the defense." *Stever*, 603 F.3d at 752. Specifically, discovery about the decision to

11  transfer Defendants from CDCR facilities to USP Atwater (RFP No. 12) may show that federal

12  agents were aware of a split between alleged NF members incarcerated in state and federal

13  facilities and therefore knew that telling Cervantes and Perez that they would be sent to a federal

14  facility could be received as an implicit threat, calculated to pressure them into cooperating with

15  the agents. Similarly, discovery about the decision to take Defendants to Moffett "in the middle of

16  the night" in the course of their transfer from CDCR facilities instead of following the standard

17  protocol to transport them to the nearest magistrate judge for initial appearances (RFP Nos. 13, 14)

18  could show federal agents' plan to pressure Defendants to cooperate, which bears on the

19  voluntariness of any statements made during their interviews. This is also applies to RFP No. 15,

20  which seeks information about the circumstances of the Moffett interview, including the decision

21  to interview Defendants outside the presence of counsel. In sum, RFP Nos. 12-15 seek

22  information and documents that are material to Defendants' anticipated motions to suppress.

23      **B.   Discoverability Under Federal Rule of Criminal Procedure 16(a)(2)**

24      The government states in the joint letter that it has identified two groups of materials

25  responsive to RFP Nos. 12-15: 1) "plans authored by the FBI and the U.S. Marshals, as well as

26  communications (including emails and letters) exchanged within and between the U.S. Attorney's

27  Office, the FBI, the U.S. Marshals, the Bureau of Prisons, and the [CDCR]"; and 2) "a group of

28  emails exchanged by the U.S. Attorney's Office with [three Northern District of California

United States District Court
Northern District of California

United States District Court
Northern District of California

1    magistrate judges] regarding coordination for the defendants' initial appearances."  Jt. Letter 1.

2    The government contends that materials in the first group are protected from discovery under Rule

3    16(a)(2).  It does not object to disclosure of materials in the second group, emails between the U.S.

4    Attorney's Office and magistrate judges.  *Id*. at 1-2.  Accordingly, as the court has determined that

5    information responsive to RFP Nos. 12-15 is material under Rule 16(a)(1)(E), the government

6    must produce emails between the U.S. Attorney's Office and three magistrate judges to

7    Defendants within five days of the date of this Order.

8           The parties dispute whether Rule 16(a)(2) bars the disclosure of plans by the FBI and U.S.

9    Marshals and communications between the U.S. Attorney's Office, FBI, U.S. Marshals, Bureau of

10   Prisons, and CDCR.

11          "[R]eports, memoranda, or other internal government documents made by an attorney for

12   the government or other government agent in connection with investigating or prosecuting the

13   case" are exempt from discovery under Rule 16(a)(2).  *See Fort*, 472 F.3d at 1110 (quoting Fed.

14   R. Crim. P. 16(a)(2)); *see also id*. at 1118 (explaining that Rule 16(a)(2) is "an exception to the

15   disgorgement requirement of Rule 16(a)(1)(E)").  The Ninth Circuit has explained that although

16   Rule 16(a)(2) "is often referred to as a 'work product' rule . . . [its] protection of investigative

17   materials extends beyond the work product privilege as defined in the civil context" by Federal

18   Rule of Civil Procedure 26(b)(3).[1]  *Id*. at 1115.  The term "government agent" as used in Rule

19   16(a)(2) "includes non-federal personnel whose work contributes to a federal criminal 'case.'"  *Id*.

20   at 1113.  Thus, in *Fort*, the court held that Rule 16(a)(2) extended to "San Francisco police reports

21   created prior to federal involvement but relinquished to federal prosecutors to support a unified

22   prosecution of Defendants for the same criminal activity that was the subject of the local

23   investigation."  *Id*. at 1119-20.  Courts have also held that Rule 16(a)(2) shields from disclosure

24   "communications between law enforcement entities."  *United States v. Williams*, No. 13-CR-

25   00764-WHO-1, 2015 WL 13359890, at *3 (N.D. Cal. June 23, 2015) (collecting cases).

26

27   [1] Federal Rule of Civil Procedure 26(b)(3) provides in relevant part that "[o]rdinarily, a party may
     not discover documents and tangible things that are prepared in anticipation of litigation or for
28   trial by or for another party or its representative (including the other party's attorney, consultant,
     surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).

United States District Court
Northern District of California

Defendants dispute the application of Rule 16(a)(2) to the materials at issue.  They argue that plans and communications "authored by" and "exchanged" with the U.S. Marshals, Bureau of Prisons ("BOP"), and CDCR are not protected because those three agencies were "not involved in the investigation or prosecution of this case."  *See* Jt. Letter 5-6.  Put another way, Defendants' position is that Rule 16(a)(2) ceases to apply to materials created by the U.S. Attorney's Office and/or the FBI once they are shared with agencies that did not play investigatory or prosecutorial roles; in this case, the U.S. Marshals, BOP, and CDCR.  *See id*. at 5.

As noted, the term "government agent" "includes non-federal personnel whose work contributes to a federal criminal 'case.'"  *Fort*, 472 F.3d at 1113.  The government argues the U.S. Marshals, BOP, and CDCR each played roles that contributed to either investigating or prosecuting this case.  As to the U.S. Marshals and BOP, it contends that these agencies "transport[ed] the defendants into federal custody, hous[ed] them pretrial, and help[ed] arrange for their initial appearances," which the government argues are "aspects of 'prosecuting the case.'"  Jt. Letter 2.  The government also contends that the CDCR was involved with facilitating the arrests of Cervantes, Perez, and other Defendants that were housed in CDCR facilities and took part in certain interviews alongside FBI agents, including the interview of Perez.  *Id*.  According to the government, CDCR's role in arresting and questioning Defendants "is undeniably an aspect of 'investigating or prosecuting the case.'"  *Id*.

Defendants maintain that the U.S. Marshals, BOP, and CDCR are non-investigatory, non-prosecutorial agencies, arguing that they only "participated in the transporting and housing [of] defendants."  *Id*. at 5.  Notably, they do not address the government's contentions about CDCR's role in connection with arresting and interviewing certain Defendants in this case, which alleges a widespread racketeering conspiracy run by NF within CDCR facilities.  Nor do Defendants acknowledge their own arguments in this motion that federal agents were in "continual contact with . . . CDCR officials" concerning the investigation in this case.  *See* Mot. 7.  The court concludes that Rule 16(a)(2) extends to responsive materials and communications shared with CDCR, since their work "contribute[d] to a federal criminal 'case.'"  *See Fort*, 472 F.3d at 1113.

As to the U.S. Marshals and BOP, the court concludes that in the context of this case,

9

United States District Court
Northern District of California

which alleges a racketeering conspiracy by incarcerated NF gang members, their transportation, processing, and housing is more central to "prosecuting the case" against Defendants than it might be in a different case.  Therefore, the fact that information was shared with the U.S. Marshals and BOP does not remove the materials from the protection of Rule 16(a)(2).  *C.f. United States v. Wilson*, 237 F.3d 827, 832 (7th Cir. 2011) ("it is impossible to say in good conscience that the U.S. Marshal's Service was not 'part of the team' that was participating in the prosecution, even if the role of the Marshal's Service was to keep the defendants in custody rather than to go out on the streets and collect evidence," holding that knowledge of the U.S. Marshal's Service about failed drug tests by the government's key witness was properly imputed to the prosecutors for purposes of *Brady*).

Defendants' authority does not support a different result.  In *United States v. Huawei Device Co., Ltd.*, No. CR19-10RSM, 2019 WL 2214673, at *1-2 (W.D. Wash. May 22, 2019), the government withheld a memorandum discussing restitution that it had shared with T-Mobile, the alleged victim in a trade secrets case, arguing that the document was not discoverable under Rule 16(a)(2).  The court held that Rule 16(a)(2) did not apply because the government had not established that "T-Mobile, as the victim, should be considered a government agent such that the document remained 'internal.'"  *Id.* at *3.  In contrast, the materials at issue here were shared with federal and state governmental agencies "in connection with investigating or prosecuting the case," not with third parties to the investigation or prosecution.[2]

---

[2] Defendants also cite cases in which courts ordered the government to produce training materials and policies because they were not "made in connection with prosecuting" those particular cases. Jt. Letter 4-5 (citing *United States v. Cedano-Arellano*, 332 F.3d 568, 571 (9th Cir. 2003) (ordering production of narcotics dog's training materials and records; holding such records "plainly do not fall within the scope of Rule 16(a)(2): they were not made in connection with investigating or prosecuting this or any other case"); *United States v. Williams*, No. C 10-00230 SI, 2010 WL 4595551, at *2 (N.D. Cal. Nov. 4, 2010) (holding "general policies and standards" regarding "recording of conversations between informants and suspects and agents and suspects" were not "documents that were created in connection with this case" and ordering production of the same)).  Here, Defendants do not contend that responsive materials include policies or records of a general nature and do not dispute that they were created in connection with this particular case.  Defendants also cite *United States v. Kim*, No. CR 10-00171 RS, 2010 WL 3490228, at *1-2, 8 (N.D. Cal. Sept. 3, 2010), in which the court ordered the production of IRS reports.  However, those reports were generated before the matter had been referred for a criminal investigation.  In contrast, the materials at issue here were generated in the course of the investigation and prosecution of this case.

1    Accordingly, the court concludes that the materials at issue are exempted from production

2    pursuant to Rule 16(a)(2).

3    Defendants also argue that even if Rule 16(a)(2) exempts the materials from disclosure,

4    they must be produced under *Brady*.  Jt. Letter 6.  The government agrees that "Rule 16(a)(2) does

5    not protect *Brady* material from disclosure," *id*. at 2, and states that it will produce to the defense

6    any material "that has even arguable exculpatory value, including material that would support a

7    pretrial motion, such as a motion to suppress," or provide it to the court for in camera review.  *Id*.

8    at 3.  It contends that there is no reason for the court "to impose any additional disclosure

9    obligation."  *Id*.

10   Defendants respond that the parties "have very different views on what materials would

11   'support a pretrial motion,'" arguing that the government's "*Brady* review is effectively

12   meaningless" because it flatly argues that "any pretrial motion relating to Moffett Field 'must be

13   denied due to binding precedent.'"  *Id*. at 6.  As discussed above, the government argued in its

14   opposition that a threat of solitary confinement "does not rise to the level of coercion and does not

15   constitute outrageous government conduct."  Opp'n 15-16 (citing *Stinson*, 647 F.3d 1210).

16   However, the court has determined that the requested discovery is also material to Defendants'

17   claim that their statements at Moffett were involuntary, an argument that the government did not

18   address in its opposition.  The court acknowledges the government's representation that it "intends

19   to treat its *Brady* obligations expansively, and where any doubt exists as to the usefulness of

20   evidence, those doubts will be resolved in favor of disclosure."  Jt. Letter 4.  The government is

21   now on notice of the bases of Defendants' anticipated motions to suppress and shall honor its

22   *Brady* obligations accordingly.  No further order is required at this time.  *See, e.g., United States v.*

23   *Flores*, No. CR 08-0730 WHA, 2011 WL 1100137, at *1 (N.D. Cal. Mar. 24, 2011) (*Brady* "is a

24   self-executing responsibility on the part of the prosecutor" and "there is no need for a court order

25   to require compliance with *Brady*. . .").

26   **IV.    CONCLUSION**

27   For the foregoing reasons, Defendants' motion to compel production of documents and

28   information responsive to RFP Nos. 12-15 is granted in part and denied in part.  The government

United States District Court
Northern District of California

11

shall produce responsive emails between the U.S. Attorney's Office and the magistrate judges to Defendants within five days of the date of this Order.

**IT IS SO ORDERED.**

Dated: July 19, 2023

Donna M. Ryu
Chief Magistrate Judge

United States District Court
Northern District of California