UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>            Plaintiff,<br><br>    v.<br><br>DAVID CERVANTES,<br><br>            Defendant. | Case Nos.:<br>21-cr-00328-YGR-1 (DMR)<br>21-cr-00328-YGR-3 (DMR)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 867 |

Defendants David Cervantes and James Perez move for leave to file a motion for reconsideration of the court's July 19, 2023 Order on Defendants' Motion to Compel (Docket No. 785).[1] [Docket No. 867.] For the following reasons, the motion is denied.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Defendants are charged with racketeering conspiracy in violation of 18 U.S.C. § 1962(d) for their alleged participation in the activities of the Nuestra Familia ("NF") prison gang while incarcerated in California state prison. The indictment was filed on August 25, 2021. On August 27, 2021, the court issued a writ of habeas corpus ad prosequendum directing the production of Cervantes, Perez, and other Defendants to the U.S. Marshal prior to appearing before a magistrate judge on September 15, 2021 at 1:00 p.m. "or as soon thereafter as practicable." [Docket Nos. 4; 867-1 (Halbert Decl. Aug. 17, 2023) ¶ 3, Ex. A.] Instead of being brought directly to court, Defendants were interviewed by federal agents at Moffett Federal Airfield in Mountain View, California. According to defense counsel, Defendants were transported by California Department of Corrections and Rehabilitations ("CDCR") facilities to Moffett, where agents "staged an elaborate interview operation in the middle of the night with tents, tables, recording devices, and

---

[1] Defendant Guillermo Solorio filed a notice of joinder in the motion for reconsideration of the July 19, 2023 Order. [Docket No. 884.]

evidence to confront the defendants with" and did not give Defendants Miranda warnings. Reichmuth Decl. Mar. 23, 2023 ¶ 6.  They were then transported to USP Atwater.  *Id.*

Defendants moved to compel discovery about law enforcement's plan to interrogate them at Moffett.  They argued that the discovery is material to planned motions to suppress evidence obtained at the interrogations based on official coercion and potential misconduct.[2]  The court held a hearing and ordered the parties to file a joint letter with additional briefing addressing whether the requested documents and information are discoverable under Federal Rule of Criminal Procedure 16(a)(2).  The parties timely filed a joint letter.  [Docket Nos. 710 (Minute Order), 746 (Jt. Letter).]

On July 19, 2023, the court granted in part and denied in part Defendants' motion to compel.  [Docket No. 785 (July 19, 2023 Order).]  The court first held that Defendants "established the materiality of information about the planning and circumstances of the Moffett interrogation under Rule 16(a)" to their anticipated motions to suppress.  *Id*. at 7.  It then turned to the discoverability of responsive materials under Rule 16(a)(2).  The government identified two groups of materials responsive to RFP Nos. 12-15: 1) "plans authored by the FBI and the U.S. Marshals, as well as communications (including emails and letters) exchanged within and between the U.S. Attorney's Office, the FBI, the U.S. Marshals, the Bureau of Prisons, and the [CDCR]"; and 2) "a group of emails exchanged by the U.S. Attorney's Office with [three Northern District of California magistrate judges] regarding coordination for the defendants' initial appearances." *Id*. at 7-8 (quoting Jt. Letter 1).  The government did not dispute the discoverability of materials in the second group, emails between the U.S. Attorney's Office and magistrate judges, and the court ordered the government to produce those materials to Defendants within five days.  *Id*. at 8.

---

[2] Four categories of documents and information are at issue (RFP Nos. 12-15): RFP No. 12 requests "Information and records about the decision to detain the defendants at USP Atwater." RFP No. 13 requests "Information and records about the decision not to bring defendants to the nearest magistrate judge for their initial appearances consistent with Federal Rule of Criminal Procedure 5."  RFP No. 14 seeks "Information and records about the decision to transport defendants to Moffett Federal Airfield in Mountain View during their transfer to USP Atwater on or about August 27, 2021."  RFP No. 15 asks for "Information and records about the decision to allow federal agents to interview defendants outside the presence of counsel while at Moffett Field."

As to the first group, the court concluded that plans by the FBI and U.S. Marshals and communications between the U.S. Attorney's Office, FBI, U.S. Marshals, Bureau of Prisons, and CDCR are exempted from production pursuant to Rule 16(a)(2), which identifies information that is not subject to disclosure by the government including "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." *See id.* at 8-11; *United States v. Fort*, 472 F.3d 1106, 1110, 1113 (9th Cir. 2007) (holding that material that falls under Rule 16(a)(2) is exempt from discovery and that the term "government agent" as used in Rule 16(a)(2) "includes non-federal personnel whose work contributes to a federal criminal 'case.'"). In relevant part, the court considered the government's unrebutted contentions "about CDCR's role in connection with arresting and interviewing certain Defendants in this case, which alleges a widespread racketeering conspiracy run by NF within CDCR facilities," and held that "Rule 16(a)(2) extends to responsive materials and communications shared with CDCR, since their work 'contribute[d] to a federal criminal case.'" July 19, 2023 Order 9 (citing *Fort*, 472 F.3d at 1113).

Defendants also argued that even if the materials were exempted from disclosure under Rule 16(a)(2), they must be produced under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), which imposes an affirmative duty on prosecutors to disclose evidence favorable to the defense. *See* Jt. Letter 6. The court held that "[t]he government is now on notice of the bases of Defendants' anticipated motions to suppress and shall honor its *Brady* obligations accordingly" and concluded that no further order was required at that time. July 19, 2023 Order 11 (citing *United States v. Flores*, No. CR 08-0730 WHA, 2011 WL 1100137, at *1 (N.D. Cal. Mar. 24, 2011) (*Brady* "is a self-executing responsibility on the part of the prosecutor" and "there is no need for a court order to require compliance with *Brady*. . .")).

Defendants now move for leave to file a motion for reconsideration of the July 19, 2023 Order based on "new material facts" that have emerged since the Order. They argue that the emails produced pursuant to the Order "appear to show that the 'government agents' . . . were not acting within the lawful scope of the[ir] authority" when they brought Cervantes and Perez to Moffett. Mot. 3. They also argue that discovery regarding the transportation of Defendants to

3

1  Moffett must be produced under *Brady* and *Giglio v. United States*, 405 U.S. 150, 154 (1972).

2      Defendants submitted a copy of their proposed motion for reconsideration. *See id*. at 3-6.
3  The government filed an opposition the day after Defendants filed their motion "[t]o facilitate the
4  expedited resolution of this issue." [Docket No. 874.] The court ordered the government to file a
5  declaration(s) supporting the factual assertions in its opposition by a date certain and the
6  government timely filed two declarations in support of the opposition. [Docket Nos. 892, 907
7  (Hotema Decl. Aug. 31, 2023), 908 (Harwell Decl. Aug. 31, 2023).] Defendants filed a reply.
8  [Docket No. 913.]

9      The government subsequently filed a surreply in which asserts that it will "not seek to
10 introduce at trial the statements made at Moffett Airfield, given that [Defendants] did not make
11 any substantive admissions during those interviews." According to the government, counsel for
12 Cervantes confirmed this understanding in writing and stated, "[w]e intend to rely on your position
13 in deciding not to move to suppress [Cervantes and Perez's] statements." [Docket Nos. 914, 914-
14 1 (Rubino Decl. Sept. 8, 2023) ¶ 4.] Defendants filed a response in which they state that the
15 government's surreply "was the first time the government has put in writing that it does not intend
16 to use at trial defendants' statements taken at Moffett Field." They state that "the defense concurs
17 that the motion for reconsideration should be decided on the other remaining issues, including
18 whether the material constitutes *Brady* or *Giglio*." [Docket No. 915 (Response to Surreply).]

19 **II. LEGAL STANDARD**

20     Criminal Local Rule 2-1 provides that "[t]he provisions of the Civil Local Rules of the
21 Court shall apply to criminal actions and proceedings, except where they may be inconsistent with
22 these criminal local rules, the Federal Rules of Criminal Procedure or provisions of law
23 specifically applicable to criminal cases." Under Civil Local Rule 7-9, a party may seek leave to
24 file a motion for reconsideration of an interlocutory order at any time before judgment. Civ. L.R.
25 7-9(a). A motion for reconsideration may be made on one of three grounds: (1) a material
26 difference in fact or law exists from that which was presented to the court, which, in the exercise
27 of reasonable diligence, the party applying for reconsideration did not know at the time of the
28 order for which reconsideration is sought; (2) the emergence of new material facts or a change of

law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments presented before such order. Civ. L.R. 7-9(b)(1)-(3). Reconsideration of a prior ruling is an "extraordinary remedy, to be used sparingly." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). The moving party may not reargue any written or oral argument previously asserted to the court. Civ. L.R. 7-9(c). "Once a reconsideration motion is filed, reconsideration is appropriate 'if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) there is an intervening change in controlling law.'" *Cnty. of Santa Clara v. Trump*, 267 F. Supp. 3d 1201, 1207-08 (N.D. Cal. 2017) (quoting *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)).

## III.   DISCUSSION

Defendants have confirmed that they will not move to suppress evidence obtained at the interrogations at Moffett. Accordingly, the sole issue before the court is whether Defendants have shown that reconsideration of the portion of the July 19, 2023 Order pertaining to the government's *Brady* obligations is appropriate. *See* Response to Surreply 2 ("the motion for reconsideration should be decided on the remaining issues, including whether the material constitutes *Brady* or *Giglio*").

Defendants seek reconsideration based on the emergence of what they describe as "new material facts": on August 27, 2021, the Honorable Virginia K. DeMarchi ordered Cervantes, Perez, and others to be produced to the U.S. Marshal prior to appearing before the Honorable Nathanael Cousins on September 15, 2021 at 1:00 p.m. or as soon thereafter was practicable. Halbert Decl. Ex. A (writs of habeas corpus). On September 14, 2021, Chief Deputy U.S. Marshal Mark Kolc sent an email informing Judge Cousins that "due to the logistics of the arrest, processing, and intake at the Santa Rita jail it is not feasible to have the defendants available in time for the 1 pm calendar [on September 15, 2021]" and that "the defendants would not be able to be seen any earlier than the following day the 16th." Halbert Decl. ¶ 4, Ex. B. Kolc continued, "[t]his is consistent with the practice as it has been since the pandemic started; we are unable to do same-day initial appearances due to the logistics involved in the arrest, processing and medical

5

clearance." *Id*. Judge Cousins forwarded Kolc's email to two individuals with the U.S. Attorney's Office the same day, writing:

> I just received this update from USMS, which is quite a bit different from what we heard last week and yesterday as to the timing of initial appearances. Individual defendants may challenge whether this violates FRCP 5(a). I plan to discuss further with the USMS.

*Id*.[3] The U.S. Attorney's Office did not respond to Judge Cousins's email. *See* Opp'n 2 n.1.

According to Defendants, "[t]he government agents who were given custody of Mr. Cervantes and Mr. Perez were not given *carte blanche* to do whatever they wanted with them," including driving them to Moffett "in the middle of the night to subject them and others to an *en masse* interrogation." Mot. 4-5. They argue that these emails "show that the court was never informed of or authorized the USM to take Mr. Cervantes and Mr. Perez to Moffett" in the early hours of September 15, 2021 and that "such a 'detour' . . . was not allowed in the Writ[.]" *Id*. at 5. According to Defendants, plans by the FBI and U.S. Marshals and communications between the U.S. Attorney's Office, FBI, U.S. Marshals, Bureau of Prisons, and CDCR about the Moffett operation must be produced under *Brady* and *Giglio* because "[t]he agents who took Mr. Cervantes and Mr. Perez to Moffett Federal Airfield in the middle of a cold night to interrogate them in tents showed bias and a disregard for the law," suggesting that the agents conspired to deprive them of their Miranda rights under 18 U.S.C. § 241. *Id*. at 6. Defendants argue that they are "entitled to reports relating to the agents' potentially illegally [sic] activity, as well as materials showing whether they acted pursuant to direction or on their own initiative, to impeach them," noting that "the government does not appear to consider these kinds of materials to be *Brady*[.]" *Id*.

Defendants assert on reply that after they filed the instant motion, "the government's due date pursuant to the deadline for *Brady*/*Giglio*/*Henthorn* disclosures passed, with the government producing virtually nothing"; accordingly, they contend that "the argument that the sought

---

[3] In relevant part, Rule 5(a) states that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise." Fed. R. Crim. P. 5(a)(1)(A).

6

discovery is *Brady*/*Giglio* is properly before this court again." [Docket Nos. 913 (Reply) 1; 913-1 (2d Halbert Decl. Sept. 5, 2023) ¶ 5.] According to Defendants, materials relating to the Moffett interrogation "should be produced as *Brady*/*Giglio*" because they "are relevant [to] impeachment . . . as to the agents' credibility in general as witnesses . . . ." Reply at 7.

As noted, the court held in the July 19, 2023 Order that the government was "on notice of the bases of Defendants' anticipated motions to suppress and shall honor its *Brady* obligations accordingly," concluding that "[n]o further order is required at this time." July 19, 2023 Order 11.

Under *Brady*, prosecutors have an "affirmative duty to disclose evidence favorable to the defense." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995). The scope of favorable evidence includes everything that is "material either to guilt or to punishment." *Brady*, 373 U.S. at 87. The prosecutor's "constitutional duty is triggered by the potential impact of favorable but undisclosed evidence." *Kyles*, 514 U.S. at 434. Evidence is material when, "considered collectively, not item by item," *id.* at 436, it would create a "reasonable probability" of a different result for the defendant. *Id.* at 433 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "The *Brady* standard for materiality is higher than Rule 16's, and its scope narrower." *United States v. Pac. Gas & Elec. Co.*, No. 14-CR-00175-TEH, 2016 WL 3185008, at *2 (N.D. Cal. June 8, 2016) (citing *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013)). The Ninth Circuit has held that "the presumption is that official duty will be done," and admonished district courts to avoid interfering with the executive branch's obligations under *Brady* and its progeny unless "there is a clear basis in fact and law for doing so." *United States v. Jennings*, 960 F.2d 1488, 1491, 1492 (9th Cir. 1992) (quotation marks and citation omitted) (reversing order excluding testimony of law enforcement witnesses based on AUSA's refusal to comply with order directing AUSA to personally review law enforcement agents' files).

Despite Defendants' hyperbole and speculation, Judge Cousins's statement about the timing of Defendants' initial appearances being "quite a bit different" from what was previously communicated is not a material fact that supports the "extraordinary remedy" of reconsideration of the July 19, 2023 Order regarding *Brady*. The government disputes Defendants' suggestion that agents were acting outside the scope of their authority in bringing Cervantes and Perez to Moffett

7

for processing following their arrests, or otherwise acting improperly. It submits the declarations of FBI Special Agent Glenn Hotema, who states that he had "oversight responsibility for planning the operation at Moffett Airfield on September 15, 2021," and former Supervisory Deputy United States Marshal Marc Harwell, who "had primary responsibility for planning the transportation, processing, and housing of the defendants who were arrested on September 15, 2021 in connection with this case." Hotema Decl. ¶ 2; Harwell Decl. ¶ 2. Hotema and Harwell describe the logistics and planning of the operation to process approximately 50 defendants, including Cervantes and Perez, following their arrests. *See* Hotema Decl. ¶¶ 2-11; Harwell Decl. ¶¶ 2-4.[4] They also address why the government deemed other locations for processing the defendants not feasible and ultimately chose Moffett as the processing location. Hotema Decl. ¶¶ 6-9; Harwell Decl. ¶ 3.

In their reply, Defendants take issue with Hotema and Harwell's declarations, including arguing that they do not "distinguish the Santa Rita defendants from the Atwater Prison defendants or explain why the Atwater Prison defendants needed to be taken to Moffett Field." Reply 1. However, the issue is whether the government has complied with its *Brady* obligations with respect to the Moffett Field materials. Defendants may dispute the decision to bring Cervantes and Perez to Moffett Field for processing, but they do not offer a "clear basis in fact and law" for the court to conclude that the government has failed to review the relevant materials to determine if they contain information material to the defense. In fact, defense counsel states in her declaration that the government has represented "that it was still awaiting responses from some of the subpoenaed agencies, including certain CDCR facilities," in connection with its *Brady/Giglio/Henthorn* disclosure. 2d Halbert Decl. ¶ 5. In other words, Defendants admit that the government is pursuing information from other agencies to comply with its disclosure obligations.

The court concludes that Defendants have failed to show "new material facts" supporting

---

[4] Notably, Harwell states that he and U.S. Marshal Don O'Keefe communicated with Judge Cousins "[a]s part of the preparations for the defendants' initial appearances," and that during their discussions, Harwell and O'Keefe "shared with Judge Cousins some of the details of the operation." Harwell states, "I cannot be certain, but it is my recollection that we discussed with Judge Cousins that the defendants would be transported to Moffett Airfield for processing prior to their initial appearances." Harwell Decl. ¶ 4.

8

1  reconsideration of the court's July 19, 2023 Order regarding the government's *Brady* obligations.

2  The motion for leave to file a motion for reconsideration is accordingly denied.

3  **IV.  CONCLUSION**

4  For the foregoing reasons, Defendants' motion for leave to file a motion for

5  reconsideration is denied.

7  **IT IS SO ORDERED.**

8  Dated: October 2, 2023



Donna M. Ryu
Judge Donna M. Ryu
Chief Magistrate Judge

9