MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MATTHEW M. YELOVICH (NYBN 4897013)
Deputy Chief, Criminal Division

MARJA-LIISA OVERBECK (CABN 261707)
LEIF DAUTCH (CABN 283975)
ASEEM PADUKONE (CABN 298812)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    mari.overbeck@usdoj.gov
    leif.dautch@usdoj.gov
    aseem.padukone@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 21-CR-328 YGR |
| Plaintiff, | **UNITED STATES' RESPONSE TO DEFENSE MOTION TO ADMIT HEARSAY RECORDINGS** |
| v. | |
| DAVID CERVANTES, | |
| Defendant. | |

The United States offered several portions of statements the defendants and their fellow Nuestra Familia members made during wiretapped calls.  These statements are admissible against the defendants as non-hearsay because they are (1) statements of the defendants themselves, and (2) coconspirator statements made in furtherance of the conspiracy.  *See* Fed. R. Evid. 801(d)(2)(A), (E).  The rule against hearsay, however, precludes the defendants from choosing their own portions of wiretapped calls to introduce into evidence, because the defendants would then be introducing their own out-of-court statements (or the statements of their *fellow* co-conspirators) and not the statements of a party-opponent.  The defense has moved to admit ten out-of-court recorded conversations from 2019 in an effort to make an end-run around the Federal Rules of Evidence.  The government previously briefed this issue after defense counsel attempted to introduce out-of-court co-conspirator statements through his cross-examination of Special Agent Glenn Hotema.  Dkt. 1393.  The government supplements that objection in response to the arguments raised by the defense regarding the exhibits it has identified in its under seal filing.

## I.      The Statements Are Being Offered for the Truth.

The defense argues in its filing that these recordings are not being offered for the truth.  This argument directly conflicts with the defense's (improper) argument during opening statement, where it revealed its purpose for introducing these recordings:

> And what do they say about him now that we're moving forward to 2019? They call him a figurehead. They question whether he is handling his responsibilities or not. And they discuss this nonaction that's been happening, this sense of nonaction that's been happening.  You'll hear the admission. He says with his own voice, "I kicked back all this time. I kicked back all this time." Which is what all the other witnesses have been saying. "But I'm going to get involved now. I'm going to get involved now." Why? He's 71. It's 2019. He's a figurehead. He doesn't want to do it and they don't need him to do it. It's talk.
>
> Transcript of Reichmuth Opening, 86:4-21.
>
> . . . . .
>
> The elephant in the room is the timeline that I've just been talking to you about. Before 2013, not doing anything. After he gets to Solano, not working, incompetent, indecisive. 2018, not talking about any type of activity. Too old to make decisions. 2019, kicking back all this time. All this nonaction that's been happening.
>
> *Id.* at 87:19-24.

U.S. RESP. TO DEF. MOT. TO ADMIT HEARSAY REC.
21-CR-328 YGR                                        1

. . . . .

> Why would somebody have to tell Mr. Cervantes he has to vote?
> **Because this timeline, this elephant in the room, is true**. Other
> people are making decisions for him. Other people are using his
> name. And that's what he is, a name.

*Id.* at 88:8-12 (emphasis added).  The defense has already argued to the jury that it should accept the

statements made in the recordings for their truth.  Accordingly, the Court should exclude these

statements.  Admitting them under the guise of a hearsay exception after defense counsel has already

argued the truth of these statements would be unfairly prejudicial, even with a limiting instruction.[1]

## II.   The Statements Offered Do Not Meet the Requirements for the "State of Mind" and "Effect on Listener" Exceptions.

Even if these statements were not offered for their truth, the hearsay exceptions upon which the

defense relies do not apply here.  As already argued in Dkt. 1393, the state of mind exception excludes

"a statement of belief to prove the fact believed," i.e., the exception "does not permit the witness to

relate any of the declarant's statements as to why he held the particular state of mind, or what he might

have believed that would have induced the state of mind."  *United States v. Emmert*, 829 F.2d 805, 810

(9th Cir. 1987) (quoting *United States v. Cohen*, 631 F.2d 1223 (5th Cir. 1980)).

Here, the defense seeks to offer statements from Antonio Guillen, Sammy Luna, and David

Cervantes which supposedly show that Guillen and Luna doubted Cervantes's involvement in the

conspiracy.  Even taking this claim at face value, the offered statements are, at best, "statements of [a

co-conspirator's] belief, not his condition."  *United States v. Arevalo-Gamboa*, 69 F.3d 545 (9th Cir.

1995) (unpublished) (citing *Emmert*, 829 F.2d at 810).  Such statements therefore should not be

admissible under the state-of-mind hearsay exception.

The defense also claims that the statements are relevant as to their effect on Antonio Guillen.  As

discussed further below, the relevance of the effect of any statements made to Guillen remains unclear

notwithstanding the defense's strained analogy to an inapposite employment termination case.  *See* Def.

---

[1] The government notes that should the Court allow any portion of the defense's requested clips to be played, the government intends to offer additional clips from the wires either under Rule 106 or as part of a rebuttal case.

1   Brief at 15 (citing *Haddad v. Lockheed California Corp.*, 720 F.2d 1454, 1456 (9th Cir. 1983)).  But

2   even so, the statements made to Guillen "went well beyond what was necessary to explain" any

3   subsequent actions by Guillen, assuming *arguendo*, that such actions are relevant.  *See Williams v.*

4   *Illinois*, 567 U.S. 50, 108 n.3 (2012) (Thomas, J., concurring) (noting that the statements that went

5   beyond necessity for the effect on listener were introduced for their truth, rather than for effect on

6   listener).

7   **III.   Luna's and Guillen's Purported Beliefs About Cervantes's Leadership are**
            **Irrelevant.**

8

9          As already articulated in Dkt. 1393, none of the recordings being offered to show the state of

10  mind of Sammy Luna and Antonio Guillen, or the effect on Antonio Guillen as a listener, is relevant.

11  *See* Dkt. 1393 at 2-3.  The government does not contend that a co-conspirator's state of mind is always

12  irrelevant.  The relevance here, however, as proffered by the defense, is non-existent.  The cases it cites

13  do not persuade otherwise.

14         Cervantes relies heavily on *United States v. Gallagher*, 90 F.4th 182 (4th Cir. 2024), a case in

15  which the Fourth Circuit reversed convictions in an alleged two-person conspiracy to obtain

16  immigration benefits illegally.  There, the Fourth Circuit held that the district court erred by excluding

17  "seemingly loving Facebook messages" that the co-conspirators sent to each other after the date their

18  marriage had allegedly ended, because those messages could have shown what each defendant believed

19  about the state of the marriage.  *Id*. at 195.

20         The reasoning in *Gallagher* does not apply for multiple reasons.  First, the Facebook messages

21  went directly to the *mens rea* of each defendant.  *Id*. at 195 ("Whether Gallagher truly loved Kalugin

22  when she wrote him saying she did, the messages were relevant to show what Kalugin could have

23  believed about the state of the marriage based on what he was hearing from Gallagher. And the

24  affectionate messages Kalugin sent Gallagher are similarly relevant to show the effect they would have

25  had on her.").  The exclusion of the evidence therefore impacted *the defendants*' states of mind, not that

26  of a co-conspirator absent from the trial.  More importantly, *Gallagher* involved a two-person

27  conspiracy.  If one of the two co-conspirators did not engage in the conspiracy due to their intent, then

28

1  the government could not prove the existence of a conspiracy.  The same does not hold true here.  The

2  alleged conspiracy in this case involves a sprawling network of Nuestra Familia, Norteño Soldado, and

3  Norteño street gang members, resulting in indictments against 54 defendants.  Even if the defense was

4  correct that the recordings show that Guillen and Luna did not enter into a conspiracy with Cervantes

5  (which they do not), that does not mean that no conspiracy existed, as it would in *Gallagher* or any other

6  two-person conspiracy.[2]

7          The other cases cited by the defense similarly do not apply.  In *United States v. Keller*, 857 F.2d

8  1479 (9th Cir. 1988) (unpublished), the Court found that the district court did not abuse its discretion by

9  admitting (upon the government's offer) a third party's statements as part of a conversation with a co-

10 conspirator (whose statements in the conversation were admitted) because they went to the co-

11 conspirators' state of mind.  The third party's statements were necessary to provide context for the co-

12 conspirator's admissible statements.  What the defense proposes to do here (admitting an array of

13 statements by co-conspirators) goes well beyond what the Court permitted in *Keller*, and as explained

14 below, is not required to provide context for any of the wiretaps introduced in the government's case in

15 chief.

16         Nor does *United States v. McPartland*, 81 F.4th 101 (2d Cir. 2023), apply here.  There is a

17 meaningful distinction between the government being permitted to elicit state of mind testimony from

18 *testifying* co-conspirators, as in *McPartland*, versus allowing the defense to selectively curate a series of

19 recordings to present to the jury the defense's belief about a non-testifying co-conspirator's state of

20 mind.  Disagreements that specific members held regarding Cervantes's actions have no bearing on

21 whether Cervantes was a member of the conspiracy.[3]

22 //

23

24        [2] The defense's reliance on *United States v. Rivera*, 273 F.3d 751, 756 (7th Cir. 2001), fails for a
   similar reason.  That a Court can consider the level of mutual trust between a buyer and seller in a drug
25 case to determine whether the relationship rises to the level of a conspiracy is not at all analogous to the
   wide-ranging conspiracy alleged in this case.
26
       [3] The same reasoning renders *United States v. Stone*, 852 F. Supp. 2d 820 (E.D. Mich. 2012),
27 inapplicable.  Admitting anti-government literature seized from the defendants in a case alleging
   conspiracy to levy war against the authority of the United States to show knowledge of ability to carry
28 out the conspiracy is distinct from admitting co-conspirator opinions on a defendant's job performance
   as a member of a criminal enterprise.

### IV.     None of These Recordings Show the State of Mind Argued by Cervantes.

Even if the Court finds that Luna's or Guillen's state of mind are relevant, the recordings do not reveal a state of mind the way that defense counsel interprets them.[4]  The specific recordings that Cervantes seeks to introduce are largely discussions in which there are ostensible references to Sammy Luna or Antonio Guillen being dissatisfied with how Cervantes and others have carried out certain tasks. The defense claims that these clips show that Luna and Guillen believed that Cervantes was "puffing and there is a lack of intentional agreement."  Def. Brief at 10.  On the contrary, as described in greater detail below, these clips from 2019 show that Luna and Guillen believed that Cervantes was very much a part of the conspiracy (which is alleged to have begun no later than 2013) as recently as 2019.  They merely disapproved of his performance on certain issues.  This does not amount to showing any "lack of an intentional agreement" as claimed by the defense.

#### 1. Clips 1 & 2 (Ex. 252-1 and 252-2)

The defense seeks to admit Luna's out-of-court statement that "nothing is happening" to members who violate the rules and push the Federal NF Agenda.  Luna uses multiple examples including Esteban (Trujillo) for sponsoring people who are stealing banks and Bubba and Viejo (Cervantes), who are in charge of Kings County, allowing someone to steal their bank and then kill someone.  Given that Luna shares his understanding that Cervantes is in charge of Kings County, it is unclear how this clip suggests that Luna believed that Cervantes was not a part of the conspiracy. Additionally, right before making the statements that the defense seeks to admit, Luna said, "the only one that -- that they've have pushed for some kind of accountability is Duck, and that's because Duck pissed them off.  It wasn't nothing about anything other than initially Duck fucking pissed them off." The lines immediately preceding what the defense seeks to admit therefore show that Luna actually did believe that Cervantes and others were taking action.[5]

//

---

[4] This is precisely the problem with permitting defense counsel to play these clips to establish the co-conspirators' state of mind – it is based on defense counsel's interpretations.

[5] By email to the Court and the government on August 14, 2024, the defense withdrew its request to play Clips No. 2, 3, and 5.  Because the defense reserved the right to renew its request, the government addresses those proposed clips in this filing.

### 2. Clip 3 (Ex. 288-1)

In this clip, the defense seeks to admit Cervantes's own out-of-court statements through the backdoor, along with some statements made by Antonio Guillen.  The conversation is regarding the role of the GAO in making the final decision regarding Matthew Rocha's punishment and the wisdom of letting Rocha remain the RC of Monterey County to maintain control over him.  In the portion the defense seeks to admit, Cervantes is telling Guillen that he "kicked back" regarding this issue, and that he will solicit everybody's opinion on the matter.  Again, this conversation pertains to a specific incident and does not show that Guillen believed that Cervantes was not a part of the conspiracy (and in fact, shows the opposite).

### 3. Clip 4 (Ex. 302-1)

In this recording, Guillen tells Salvador Castro that he was thinking about moving Cervantes's street regimental commander responsibility from Hanford to somewhere else, but said that he was not sure if that would be a good idea since Cervantes delegated duties to other individuals.  Here, too, Guillen's statements make clear that Cervantes is a member of the conspiracy, despite his disapproval of Cervantes's delegating tasks to others.

### 4. Clip 5 (Ex. 314-1)

This is another clip where the defense attempts to introduce Cervantes's own statements through the backdoor.  In this recording, Cervantes and Guillen are discussing which CAT III's to promote to the Inner Council.  Prior to the portion the defense seeks to admit, Cervantes tells Guillen that "Turtle, Esteban, Resio and Bubba" are the CAT III's who are no longer on a one-year probation status.  Cervantes then tells Guillen that all CAT III's need to complete one year of probation.  The defense seeks to admit a clip in which Cervantes says that he will not participate in this vote, with the intention of using this to highlight his purported inactivity.  However, in a later portion of the recording, he explains why he did not want to vote, citing possible perceptions of bias given that his bunkmate Bubba was one of the CAT III's under consideration: "They won't be fair to me, you know? Be fair for everyone else. You know, (unintelligible) and he's the only one I really, (unintelligible) I'm not gonna nominate him. Let someone -- if someone else think  (unintelligible), then let them do it."  Cervantes goes on to tell Guillen, "Yeah. That's – that's what I don't want. I don't want them to come at me, I

don't want them to come at you."  The defense's clip takes Cervantes's view of the vote out of context

to make it appear as though he was disinterested.  In reality, he was trying to shield himself from

criticism that would come from playing favorites.

### 5.  Clips 6 and 7 (Ex. 352-1 and Ex. 352-2)

In these clips, Sammy Luna and Antonio Guillen discuss how Shasta County is unassigned and

they laugh about assigning it to Viejo (Cervantes).  They proceed to say that Cervantes could do

whatever he wants with his assignment.  In the second clip, they discuss how Bubba is responsible for

Lake County and Humboldt County, and that he has been helping with Kings County (which Cervantes

is responsible for, though that is not specifically referenced in this clip).  Luna mentions that those

counties are "not producing shit."  At most, these clips show that certain counties have not been

producing the money that Luna had hoped for, but they do nothing to suggest that Luna or Guillen

believed that Cervantes is not a part of the conspiracy.

### 6.  Clips 8, 9, and 10 (Exs. 353-1, 353-2, and 353-3)

In these clips, Luna and Guillen talk about Cervantes being slow to carry out an investigation

into a specific complaint that they say has been on the table for seven to eight months.  This

conversation further establishes that Luna and Guillen believed Cervantes to be a part of the conspiracy,

and in a portion of the conversation after the clip the defense seeks to play, Luna says in reference to

Cervantes being slow to act on the complaint, "don't set a different standard for these brothers just

because they're from the era and they came up with you."  This comment therefore suggests that Luna

believed that Cervantes had not acted on the complaint due to favoritism towards the subjects of the

complaint, not that Cervantes was not a member of the conspiracy.  In Exhibit 353-3, Luna and Guillen

refer to two individuals (presumably Cervantes and Perez) as "figureheads" to bring to the table in their

discussions with the Federal NF.  The term "figureheads" is in reference to the roles they would play in

the discussions with the Federal NF members (who rose through the ranks of the NF with Cervantes and

Perez) since, as Luna says, "they bring a different era to the table."  These conversations do not reveal

anything about Luna's or Guillen's state of mind regarding Cervantes's involvement in the conspiracy at

large.

//

1    **V.     The Rule of Completeness Does Not Apply.**

2          The defense further argues that the rule of completeness necessitates the admission of these

3    statements under Federal Rule of Evidence 106.  This argument fails for two reasons.  First, statements

4    admitted under Rule 106 must be offered at the same time as when the original statements were being

5    offered.  *See* Fed. R. Evid. 106 ("If a party introduces all or part of a statement, an adverse party may

6    require the introduction, **at that time**, of any other part--or any other statement--that in fairness ought to

7    be considered at the same time.  The adverse party may do so over a hearsay objection.") (emphasis

8    added); *United States v. Ehmer*, 87 F.4th 1073, 1125 (9th Cir. 2023) (The rule, by its terms . . . merely

9    provides that, if all or part of a 'recorded statement' is offered, then an opponent may require that certain

10    additional parts or recorded statements must also be **introduced contemporaneously** if fairness

11    requires.") (emphasis added).  Despite being on notice about the government's exhibits, the defense did

12    not attempt to introduce these recordings contemporaneously when the government introduced its

13    original recordings.[6]  Instead, the defense first sought to introduce the substance of these recordings

14    through cross-examination of SA Hotema, and now seeks to play these recordings in its case-in-chief.

15    These attempts to introduce the recordings fall outside the bounds of Rule 106.

16          Second, Rule 106 "renders additional portions of a complete document or recording relevant

17    when the opposing party distorts the meaning of the document or recording by introducing misleading

18    excerpts into evidence."  *United States v. Lopez*, 4 F.4th 706, 715 (9th Cir. 2021).  The recordings that

19    the government has introduced do not distort the meaning of the recordings, nor do they introduce

20    misleading excerpts into evidence.  The defense simply seeks to introduce other portions of recordings

21    to advance their theory of the case.  This is not a proper basis upon which to admit additional excerpts

22    under the rule of completeness.  *See United States v. Martis*, No. 22-10056, 2024 WL 957522, at *1 (9th

23    Cir. Mar. 6, 2024) (unpublished) ("Because the government's excerpts are not misleading and do not

24    distort the meaning of [the defendant's] statements, the district court did not abuse its discretion by

25    denying [the defendant's] request to admit supplemental excerpts.") (citing *United States v. Dorrell*, 758

26    F.2d 427, 435 (9th Cir. 1985) (excluding portions of confession that did not "change the meaning of the

27

28          ───────────────────
          [6] In fact, some of the recordings offered by the defense did not even come from calls the
    government sought to introduce.

1  portions of [the] confession submitted to the jury"); *see also United States v. Vallejos*, 742 F.3d 902, 905

2  (9th Cir. 2014) (affirming exclusion of confession to remove details meant to "humanize" defendant,

3  which were irrelevant to confession of the crime)).  Therefore, even though the amended rules permit

4  hearsay statements to be admitted under Rule 106, that rule does not apply here.

5  **VI.   Excluding the Recordings Does Not Violate Cervantes's Due Process Rights.**

6  The defense also claims that excluding these calls would violate Cervantes's due process rights

7  to present his version of the facts.  "An evidentiary error violates a defendant's due process rights when

8  it excludes: '(1) the main piece of evidence, (2) for the defendant's main defense, to (3) a critical

9  element of the government's case.'  *United States v. Haischer*, 780 F.3d 1277, 1284 (9th Cir. 2015)

10  (citing *United States v. Evans*, 728 F.3d 953, 967 (9th Cir. 2013)).

11  In support of this proposition, the defense cites to two cases in which courts held that certain

12  categories of evidence should be admitted so that the defendants can present a particular defense.  In

13  *United States v. Franco*, No. R1600268001TUCCKJEJM, 2017 WL 11466629, (D. Ariz. Sept. 7, 2017),

14  the court allowed the defense to present what it determined to be permissible character evidence to show

15  that the defendant was always willing to do favors for others to support his defense that he was an

16  unwitting participant in a conspiracy.  *Id.* at *1.  In *Haischer*, 780 F.3d at 1284, the Ninth Circuit held

17  that the defendant's due process rights had been violated by the district court excluding evidence that the

18  defendant had been abused by her co-conspirator boyfriend since that evidence was critical to proving

19  her *mens rea* defense to conspiracy and wire fraud charges.

20  Neither of these cases supports the defense's due process claim.  In both of those cases, the

21  courts were evaluating whether it would be proper to exclude entire categories of evidence (character

22  evidence of helpfulness in *Franco* and evidence of abuse in *Haischer*).  The wholesale exclusion of such

23  evidence arguably would rise to the level of a due process violation since the defendants were unable to

24  present their defense in the absence of that evidence.  The same is not true here, as the defense cannot

25  show that these wire recordings are a "main piece of evidence" to support the defense of a purported

26  lack of activity in the conspiracy.  The Court has not prevented Cervantes from pursuing this defense.

27  Defense counsel has had opportunities to cross-examine seven cooperating witnesses about Cervantes's

28  purported inactivity and did so with both Derek Williams and Matthew Rocha.  Cervantes may also

testify himself and call Antonio Guillen or Sammy Luna to testify about Cervantes's purported

inactivity.  And as noted in defense counsel's August 14, 2024, three of the defense's requested clips

have already been played for the jury by the government and provide additional evidentiary basis for the

defense to argue from in its closing argument.  For these reasons, excluding the other out-of-court

statements offered by the defense would not be a due process violation since they are not a main piece of

evidence to support Cervantes's claim.

As noted above, Guillen's and Luna's beliefs about the effectiveness of Cervantes's leadership

also do not challenge any critical element of the government's case.  That they believed that Cervantes

was not effective as a leader or a regimental commander of an assigned county, or that Cervantes

delegated his responsibilities to others, has no bearing on whether Cervantes agreed to participate in the

racketeering conspiracy.  Even if, as the defense claims, these recordings show that Guillen and Luna

did not intend to enter into an agreement with Cervantes,[7] their intention is irrelevant as to whether

Cervantes entered into a conspiracy involving the many other Nuestra Familia, N-Sol, and Norteño

members who are a part of the charged enterprise.  *See United States v. Holmes*, No. 5:18-CR-00258-

EJD-1, 2023 WL 2899525, at *4 (N.D. Cal. Apr. 10, 2023) ("Whether Ms. Holmes was involved in the

financial modeling presented to select investors was not a necessary element of the government's case,

given the other misrepresentations she had made to investors.").

**VII.    Conclusion**

The government respectfully requests that the Court exclude the self-serving, out-of-court

statements that the defense wants to introduce in its case-in-chief.

DATED:  August 24, 2024

Respectfully submitted,

MARTHA BOERSCH
Chief, Criminal Division


_____
                  */s/*
MARJA-LIISA OVERBECK
LEIF DAUTCH
ASEEM PADUKONE
Assistant United States Attorneys

---

[7] They do not.  The recordings show that Guillen and Luna believed that Cervantes was in fact a leader of the conspiracy and that he should have been more active in his role.  Equally as important, to prove the racketeering conspiracy charge, the government need not even prove that Cervantes was a leader of the conspiracy, let alone that he was a good one.